**UNITED STATES of America,**
**Plaintiff,**

v.

**AMERICAN BAR ASSOCIATION,**
**Defendant.**

No. Civ. A. No. 95–1211(RCL).

United States District Court,
District of Columbia.

Feb. 6, 2001.

D. Bruce Pearson, James John Tierney, Jessica Nell Butler-Arkow, U.S. Department of Justice, Antitrust Div., Washington, DC, for U.S.

Roger Eugene Warin, David Lee Roll, Steptoe & Johnson, L.L.P., Washington, DC, Ronald Simon Flagg, Sidley & Austin, Washington, DC, David T. Pritikin, pro hac vice, David R. Stewart, pro hac vice, Sidley & Austin, Chicago, IL, Darryl L. DePriest, pro hac vice, Chicago, IL, for American Bar Ass'n.

Lawrence Robert Velvel, Andover, MA, for Massachusetts School of Law.

Robert Ted Pritchard, Inglewood, CA, pro se.

### MEMORANDUM AND ORDER

LAMBERTH, District Judge.

Now before the Court are two motions to modify the Final Judgment entered in this case on June 25, 1996. Both parties, the United States and the American Bar Association, agree on the modification. Finding that the modification is in the public interest, the Court GRANTS the plaintiff's and the defendant's motions.

### BACKGROUND

In 1995, the Antitrust Division of the United States Department of Justice filed a civil suit in this Court against the American Bar Association ("ABA"). The complaint alleged that the ABA had restrained competition by fixing compensation levels of professional personnel at ABA-approved schools and by acting in ways to limit competition from non-ABA-approved schools. The Final Judgment[1] in the case enjoined the ABA from engaging in certain anticompetitive practices and promulgated new procedures which the ABA must follow in its accreditation process. One of these procedures dealt with the ABA's final accreditation decisions.

Prior to the Final Judgment, accreditation decisions at the ABA were made by a Council which was composed of, inter alia, an Accreditation Committee and a Standards Review Committee. The Accreditation Committee would evaluate individual applications and make recommendations regarding whether or not to accredit a particular school. The Standards Review Committee reviewed current accreditation standards and proposed new standards, as well as interpretations of those standards. While new standards were forwarded to the ABA House of Delegates for final ap-

---

1. The Final Judgment in this case was issued by Judge Richey on June 25, 1996. *See United States v. American Bar Assoc.*, 934 F.Supp. 435 (D.D.C.1996). Due to Judge Richey's death, this case was reassigned to the undersigned judge when the current motion for modification was made.

proval, interpretations of those standards were not similarly treated.

The Antitrust Division regarded the House of Delegates lack of supervision over standard interpretations as problematic. According to the government's findings, the members of the Standards Review Committee had a direct economic interest in the outcome of their interpretations. The 1996 Final Judgment attempted to correct this by ordering that interpretations of standards made by the Standards Review Committee be reviewed by the ABA's full House of Delegates. This new arrangement appeared successful until the following year.

In 1997, the ABA applied to the Department of Education ("DOEd") for a renewal of its status as a nationally-recognized accrediting agency. The DOEd evaluated the ABA's accreditation procedures, particularly in light of 20 U.S.C. § 1099a(a)(3), (b) and 34 C.F.R. § 602.14(a), (b). These laws require a trade association wishing to retain its status as an accrediting agency to follow, inter alia, three standards in administering its accreditation program. First, the trade association may not make its own accreditation decisions, but rather must see to it that they are made by a "separate and independent" body. Second, the members of the accrediting body may not be selected by the trade association's president or board of directors. Third, ⅐ of the accrediting body's members must come from the general public, not the trade association's membership.

The DOEd, after concluding its evaluation of the ABA's accreditation program in February 2000, determined that the practice of having the ABA's full House of Delegates approve the accreditation decision violated the above accreditation rules. With an interest in complying with applica-ble laws, but also retaining some independent oversight of the accreditation process, the Antitrust Division and the ABA sought advice from the DOEd on how to restructure the ABA's accreditation process.

Based on the DOEd's suggestions, the Antitrust Division and the ABA devised a process whereby final accreditation-related decisions would be made according to a review and remand process. Under the new process, the ABA House of Delegates would review accreditation-related decisions made by the Council, and, if found to be questionable, remand the decision to the Council for further consideration. The House of Delegates may remand a Council decision twice, but must accept it the third time it is submitted for review.[2] Under no circumstances may the House reverse a Council decision on accreditation. The DOEd has indicated that these new procedures will not violate any applicable laws.

These new procedures, upon which the government and the ABA are in full agreement, are what the government proposes as modifications to the 1996 Final Judgment. The Court now considers whether these modifications are permissible.

## ANALYSIS

### I. Standard of Review

When, as here, all parties to a final judgment assent to its modification, a court is "bound to accept any modification that the [Antitrust Division] ... reasonably regard[s] as advancing the public interest." *United States v. Western Elec. Co.*, 993 F.2d 1572, 1576 (D.C.Cir.1993). It should be stressed that the court's function is not to undertake its *own* evaluation of what is in the public interest, but rather just to ensure that the proposed modifica-

---

2. On a Council decision to remove ABA-accreditation, the House of Delegates may only remand once, and must accept the decision on the second submission.

tion is within the *"zone of settlements* consonant with the public interest." *United States v. Western Elec. Co.*, 900 F.2d 283, 309 (D.C.Cir.1990) (emphasis in original). *See also Western Elec.*, 993 F.2d at 1576. Put more fully, "the court's function is not to determine whether the resulting array of rights and liabilities is the one that will best serve society, but only to confirm that the resulting settlement is within the reaches of the public interest." *United States v. Microsoft Corp.*, 56 F.3d 1448, 1460 (D.C.Cir.1995) (quoting *Western Elec. Co.*, 900 F.2d at 309).

## II. The Proposed Modification

■ Viewing the government's proposed modification under the deferential standard ordered by the Court of Appeals, the Court finds that the government's proposed modification is one that is within the "zone of settlements consonant with the public interest," and is therefore acceptable.

The Court starts first with the observation, which has never been corrected on appeal or otherwise, that the Final Judgment entered in 1996 by Judge Richey is in the public interest. Thus, the Court is faced with the question of whether the proposed modification alters the judgment so much that it is no longer within the public interest. At its core, the proposed modification alters the judgment by eliminating the *power* of the ABA House of Delegates to make accreditation decisions. Importantly, however, it does not reduce the House's capacity for oversight.

The Court cannot fathom that this alteration takes the 1996 Final Judgment out of the public interest. If anything, it furthers the public interest by more properly complying with DOEd accreditation regulations. To hold otherwise would be nonsensical, as it would suggest that altering a judgment to bring it into compliance with federal law is not in the public interest. There is simply no way around the fact that a judgment found once to be in the public interest cannot somehow be removed from it when it is altered only inasmuch as necessary to comply with federal law.

■ Despite this straightforward conclusion, several members of the academic community find fault with the government's proposed modification. As an initial matter, mere disagreement with a decision, even if significant, is not enough to render a modification outside the public interest. As the Court of Appeals has observed, a court "should not reject an otherwise adequate remedy simply because a third party claims it could be better treated." *United States v. Microsoft Corp.*, 56 F.3d 1448, 1461 n. 9 (D.C.Cir.1995).

With this in mind, the Court is confident that the judgment as modified is squarely in the public interest. The arguments filed against the government's modification stray far from the central issue of the public interest. They range from personal grievances with ABA conduct to attacks on the lawfulness of DOE regulations.[3] In any event, to the extent that any of the arguments elucidate the public's interest in

**3.** The Court notes that the Massachusetts School of Law's amicus brief, while comprehensive in certain respects, is largely devoid of the public interest arguments relevant to this proceeding. While the brief reveals the school's immense dissatisfaction with the ABA's accreditation process, it fails to sufficiently focus on the core issue before the Court: the *modification* to the judgment. As

the 1996 Final Judgment has already been found to be in the public interest, the failure to address the modification is tantamount to not addressing the current issue before the Court at all. Perhaps the school's grievances may give rise to a separate cause of action, as they have in the past. In this proceeding however, the complaints are not persuasive.

this issue, the Court finds them insignificant when compared to the slight modification, the impetus for which is compliance with federal law. But even if the arguments were much more persuasive, the Court would not be bound to accept them. Rather, it is much the opposite. The Court is "bound to accept any modification that the [Antitrust Division] ... reasonably regard[s] as advancing the public interest." *Western Elec. Co.*, 993 F.2d at 1576. The Court finds that the Antitrust Division is reasonable in its belief that the modification is in the public interest, and therefore dutifully accepts the modification.

### CONCLUSION

For the foregoing reasons, it is hereby

ORDERED that the plaintiff's motion to modify the final judgment is GRANTED; further, it is

ORDERED that the defendant's motion to modify the final judgment is GRANTED; further, it is

ORDERED that the Massachusetts School of Law's motion for leave to file an amicus curiae brief is GRANTED.

SO ORDERED.